UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 5:20-CR-09-JMH-MAS |
| v. | ) | |
| | ) | **MEMORANDUM** |
| ANTWONE SANDERS, | ) | **OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\*

This matter is before the Court on Defendant Antwone Sanders' motion for disclosure of supplemental discovery. [DE 25]. Sanders asks that the United States be required to provide discovery materials related to the police investigation supporting a search warrant in his case. [*Id.*]. Sanders alleges that the government relied entirely on controlled buys performed by a confidential informant to form the basis of the affidavit that provided probable cause to search Sanders' residence. Because information about the buys is, Sanders argues, material to his defense, the government should turn over any information it has about the buys. The government claims that information it may possess about the controlled buys is protected by privilege because it would reveal the identity of a confidential informant. It also argues that the discovery Sanders requests is not material to his defense in this case.

The United States has responded to Sanders' motion [DE 29] and Sanders replied [DE 30], making the motion ripe for review. The Court agrees that the information the government may have related to the controlled buys is privileged to the extent that releasing it to Sanders would reveal the identity of the confidential informant, which it is almost certain to do. Additionally, the Court finds that the information is not material to Sanders' defense to the government's case in chief. For those reasons, Sanders' motion for supplemental discovery will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sanders was indicted on January 16, 2020 on one count of possession with the intent to distribute a substance containing a detectable amount of heroin in violation of 21 U.S.C. § 841(a)(1); one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and one count of possession of a firearm by a convicted felon in violation of 19 U.S.C. § 922(g)(1). Sanders was on federal supervised release when he was charged. These allegations stemmed from an investigation by the Lexington Police Department, which included the execution of a state search warrant at 2852 Yellowstone Parkway D in Lexington, Kentucky. [See DE 29 at 1-2]. The warrant authorized the search of the apartment, of Sanders himself, and of a Chrysler 300 vehicle.

2

The petition for the state search warrant included the affidavit of Lexington Police Officer Brandon Hazlewood. Hazlewood stated that he first received information about Sanders' alleged drug sales from a confidential informant on April 17, 2019. [DE 29-1 at 4-5]. Hazlewood said that in the time following the tip from the informant, Detective Brian Cobb and Hazlewood met with the informant and organized two controlled buys. [*Id*. at 5]. The affidavit describes the buys and surveillance in some detail. [*Id*.]. It concludes that:

> Based on the information received and the surveillance that followed, it is believed that evidence of Heroin/Fentanyl trafficking will be located upon search of 2852 Yellowstone Drive Apartment D, Lexington [sic], KY 40517.

The government states that it "is aware that there is some documentation and audio relating to the requested controlled purchases." [DE 29 at 4].

During the search of the apartment, officers located suspected heroin/fentanyl, a Taurus .380 caliber pistol, a Smith & Wesson 9 mm pistol, synthetic marijuana, digital scales, crack cocaine, cocaine, ammunition, and $390 in U.S. currency. [DE 25 at 3]. According to police reports, Sanders admitted to the officers that the contraband was his. The Kentucky State Police Laboratory found that the substances submitted did contain Schedule I and II controlled substances. [DE 25-2 at 36].

Sanders filed this motion on April 17, 2020, exactly one year to the date of the search warrant in question. [DE 25]. He also filed a motion for an extension of time to file defensive motions, which the Court granted. [DEs 26, 28]. The Court ordered the United States to respond to Sanders' discovery motion and provided time for Sanders to reply. Briefing on the issue is complete, and thus, the motion is ripe for review by this Court.

## II. DISCUSSION

Sanders states that, from the outset of the case, he has expressed concerns about the nature of the investigation that led to the issuance of the state search warrant. [DE 25 at 4]. When Sanders' counsel received and reviewed the government's initial discovery disclosures, he noticed it provided no evidence related to the two controlled buys that allegedly involved Sanders. [*Id*.]. Sanders explained that "[t]o be clear, the government disclosed no case reports from the officers involved in the controlled buys, no audio or video recordings of the transactions, no field or laboratory test results from the narcotics obtained during the buys, and no photos of the contraband." [*Id*. at 4-5].

The government states, and Sanders does not disagree, that the undercover controlled purchases referenced and relied upon for the basis of the search warrant do not form the basis of the charged conduct. [DE 29 at 4]. The government admits that the

4

controlled purchases and surveillance surrounding them provided probable cause that Sanders was distributing narcotics. [*Id*.].

Rule 16(a)(1)(E) provides that, upon the defendant's request, the government must permit the defendant to inspect "documents and objects" in its possession if: "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed.R.Crim.P. 16(a)(1)(E). If a party fails to comply with Rule 16, the court has discretion to impose a number of sanctions, including ordering discovery, granting a continuance, excluding the evidence, or entering "any other order that is just under the circumstances." Fed.R.Crim.P. 16(d)(2).

### A. Rule 16(a)(1)(E)(ii)

The government states that it does not intend to use the disputed evidence in its case in chief. Sanders does not dispute this contention. Thus, Rule 16(a)(1)(E)(ii) is inapplicable and the Court will evaluate whether the government should provide Sanders with the requested evidence under the other two circumstances prescribed by Rule 16(a)(1)(E).

### B. Rule 16(a)(1)(E)(i)

"A defendant does not satisfy [the] requirement that an object be material to the preparation of the defendant's defense by means of merely conclusory arguments concerning materiality." *United*

5

*States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991)(internal citation omitted). Instead, a defendant must make a *prima facie* showing of materiality. *Id.; see also United States v. Lykins*, 428 F. App'x 621, 624 (6th Cir. 2011). "Defense" within the meaning of Rule 16 means the "defendant's response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). Thus, a "defense" can only be a response to the government's arguments regarding the crime the defendant is charged with. *United States v. Robinson*, 503 F.3d 522, 532 (6th Cir. 2007). The United States Court of Appeals for the Sixth Circuit has held that "information which does not counter the government's case or bolster a defense is not material 'merely because the government may be able to use it to rebut a defense position.'" *Lykins*, 428 F. App'x at 624 (citing *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)).

Further, "[i]n assessing materiality, [courts] consider the logical relationship between the information withheld and the issues in the case, as well as the importance of the information in light of the evidence as a whole." *Id*. The Sixth Circuit adopted the rule of most other Courts of Appeals in holding that there must be some indication that the disclosure requested would enable the defendant to "alter the quantum of proof in his favor." *Id*. (citing *Stevens*, 985 F.2d 1175 at 1180).

6

These rules significantly narrow the meaning of a "defense" for the purposes of discovery. The government argues that there is no reasonable probability that the disclosure of information about an undercover controlled purchase will change the quantum of proof, and accuses Sanders of only wanting to determine the identify of the informant. Sanders counters that he does not seek any identifying information about the informant and correctly notes that, if the controlled buys and proof of them do not provide probable cause, then the warrant may be invalid and fruits of the search could be suppressed.[1] These arguments beg the question of whether Rule 16(a)(1)(E) should protect documents a defendant seeks to discover for the purpose of testing the sufficiency of a

---

[1] Though the Court is not evaluating here the legitimacy of the affidavit or the validity of the search warrant itself, it acknowledges the importance of scrutinizing warrants that lead to searches of one's private residence. Search warrants are invalid under the Fourth Amendment unless the supporting affidavit establishes a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)(internal citations omitted). As Sanders noted, in a narcotics case, this circuit has held that there must be evidence that a person distributed narcotics from his home, that he used it to store them, or that other suspicious activities happened there. *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). This can be accomplished, and often is, through surveillance indicating that the defendant used his car to transport drugs from his home to a controlled buy. *Id*. at 383. Sanders states that the only way to evaluate whether the controlled buys and surveillance in this case were legitimate is to seek information about the confidential informant and buys themselves. [DE 30 at 4]. But there is another way. Sanders could call the officers who conducted the surveillance to the stand about the veracity of the affidavit's statements.

7

search warrant. The Sixth Circuit has not squarely addressed this question.

However, it has addressed a similar issue and another substantial force at work here: the government's privilege to refuse to identify a confidential informant. *See Roviaro v. United States*, 353 U.S. 53 (1957)(recognizing a general privilege for the prosecution to withhold from an accused disclosure of the identity of an informant, with certain exceptions and limitations); *United States v. Hanna*, 341 F.2d 906 (6th Cir. 1965). While Sanders argues that the identity of the informant need not be revealed, it is clear from the government's response and the facts surrounding the case that the release of documents and audio from the buy would likely reveal the informant's identity.[2] If the government redacted all information tending to identify the confidential informant, it is unlikely there would be much information left for Sanders to use to evaluate the veracity of the affidavit. Thus, these rules regarding the government's privilege to prevent the disclosure of a confidential informant's identity is vital to the analysis of Sanders' request.

The decision of whether to require the disclosure of a confidential informant's identity is left to the discretion of the

---

[2] The government, in its response to Sanders' motion, states that "the disclosure of materials related to the controlled purchases would also result in the disclosure of informant's identity." [DE 29 at 8].

8

trial court. *United States v. Cummins*, 912 F.2d 98, 103 (6th Cir. 1990)(internal citations omitted). The Court should consider the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors when deciding if a confidential informant's identity should be disclosed. *United States v. Dexta*, 136 F. App'x 895, 904-05 (6th Cir. 2005). "Courts will order the disclosure of a confidential informant only upon a showing that it 'is essential to a fair trial.'" *United States v. Smotherman*, 564 F. App'x 209, 213 (6th Cir. 2014)(quoting *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992)). Where the evidence upon which the government's case in chief is based was secured by government agents personally, and is in no way dependent on any informer, the Sixth Circuit has found the privilege to apply. *United States v. Craig*, 477 F.2d 129, 131 (6th Cir. 1973).

The Sixth Circuit has held that the failure to provide the identity and information about an informant may be prejudicial error where the informant was the *only known witness* of the crime and the disclosure of the informant's identity was *the only way* to determine the legality of a search. *United States v. Harper*, 609 F.2d 1198 (6th Cir. 1979)(emphasis added). The Second Circuit has held that the refusal of a judge to order the disclosure of the identity of an informant who provided information supporting probable cause for issuance of a search warrant raised no constitutional issue because the information did not constitute

9

the core or main bulk of the information supporting the warrant. *Mapp v. Warden*, 531 F.2d 1167 (2d Cir. 1976).[3] Other federal courts have held that the government does not need to disclose the identity of a confidential informant when the sole purpose is to attack the probable cause supporting a search warrant. *See, e.g., United States v. Cartwright*, 183 F.Supp.3d 1348 (M.D. Ga. 2016).

Additionally, the Fourth Circuit has held that a drug defendant failed to establish the materiality of the informant's identity, where the informant participated in a controlled purchase that resulted in the defendant's arrest and the issuance of a search warrant for his residence because participation in the buys was not the subject of his offenses. *United States v. Murel*, 502 F. App'x 291, 293 (4th Cir. 2012). The Fifth Circuit has held the same, noting that a defendant could question the police detective regarding the confidential informant's reliability. *United States v. Edwards*, 133 F. App'x 960, 963 (5th Cir. 2005).

In sum, the question of "materiality" under the Rule 16 and the standards applied to determine the government's privilege in keeping an informant's identification confidential are similar. Both require a defendant to make some showing that disclosure of

---

[3] The Sixth Circuit has likewise held that the non-disclosure of the identity of a confidential informant did not violate the defendant's Sixth Amendment right to confront his accusers. *United States v. Sales*, 247 F. App'x 730 (6th Cir. 2007).

10

the information or identity would assist his defense to the government's case in chief.

With these rules in mind, the Court turns to the facts of this case. As the affidavit states, Detective Cobb and Officer Hazlewood met with the informant, searched his or her vehicle, and confirmed through a police database that the confidential informant was providing information about Sanders. [DE 29-1 at 5]. The police monitored and witnessed the controlled buy at a pre-determined location. [*Id.*]. The informant's vehicle was searched again and no contraband was located. [*Id.*]. After the informant provided police with suspected heroin/fentanyl, police followed Sanders directly after the buy to the residence that would later be searched. [*Id.*]. During the second controlled buy, the police independently watched Sanders exit the apartment and enter the Chrysler 300 to be searched. [*Id.*]. Officers followed the vehicle to the predetermined meeting location and watched the controlled buy take place. [*Id.*]. Sanders never exited the vehicle and drove straight back to the apartment on Yellowstone Parkway. [*Id.*].

It is clear from this affidavit that several officers witnessed and participated in the controlled buys in question. The application for and the affidavit in support of the search warrant is comprised of several witnesses to these controlled buys, in addition to the confidential informant. Any one of these officers could testify to the reliability of the controlled buys.

11

Additionally, to the extent that some information is not covered by the confidential informant privilege, the Court finds that Sanders' argument that the information *might* reveal some kind of doubt about the basis of the search warrant does not meet his burden of demonstrating that the information would "alter the quantum of proof in the case" as controlling caselaw requires.[4] The connection between the confidential informant's role in the police investigation and Sanders' defense to the government's case in chief is too attenuated to be material under Rule 16(a)(1)(E)(i). Likewise, Sanders has not demonstrated that the identity of the confidential informant, which apparently would be revealed if the government turned over any useful information, is necessary to the defense of the government's case in chief.

**C. Rule 16(a)(1)(E)(iii)**

Sanders also argues that information regarding the controlled buys are discoverable under the third section of Rule 16(a)(1)(E). [DE 25 at 7-8]. He alleges that the drug evidence itself was

---

[4] A reasonable question has been posited regarding the "problems of particularizing a need or interest when the party has no access to the evidence he seeks to discover." Roger Traynor, *Ground Lost and Found in Criminal Discovery*, 39 N.Y.U. L. REV. 228, 230 (1964). Even former Chief Justice John Marshall asked the following: "Now, if a paper be in possession of the opposite party, what statement of its contents or applicability can be expected from the person who claims its production, he not precisely knowing its contents?" *United States v. Burr*, 25 F.Cas. 187, 191 (C.C.D.Va. 1807). Even so, under Rule 16 and the caselaw interpreting it, federal district courts find that documents or things sought are not material.

12

"obtained from" Sanders, and thus, is discoverable. [*Id.*]. The government focuses on Sanders' statements from the controlled buy, which, apparently, the government has access to. [DE 29 at 8-9]. But Sanders explains that he seeks not only the recording, but drug evidence, case reports, photographs, and/or laboratory test results from the substances purchased during the controlled buy. [DE 30 at 5-6].

It is unclear whether the government has access to any of the information requested by the defendant, other than the recording and clearly privileged materials. *See United States v. Giacalone*, 574 F.2d 328, 339 (6th Cir. 1978), *cert. denied*, 439 U.S. 834 (1978)(there was nothing in the defendant's affidavit that allegedly undisclosed tapes were in existence at the time defendant's discovery motions were made, or that information from such recordings formed any part of the government's case). It is also noted that the scope of discovery under subsection (E) is limited by Rule 16(a)(2), which does not authorize the discovery or inspections of reports, memoranda, or other internal government documents made by an attorney or other government agents in connection with the investigation of a case.

Here, Sanders alleges that he "owned" the substances sold to the undercover agent during the controlled buy and is thus entitled to any reports relating to those drugs. But a literal reading of the rule discounts this conclusion. The "item," the alleged drugs

13

seized, cannot be simply given back to the defendant as discoverable evidence for reasons that do not need to be stated here. Any reports about them, if they even exist, were not "obtained from" and do not "belong to" the Sanders. Thus, Rule 16(a)(1)(E)(iii) is inapplicable.

### III. CONCLUSION

The information Sanders seeks, to the extent that it exists, is not discoverable pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E).

Accordingly, **IT IS ORDERED** as follows:

(1) Defendant Antwone Sanders' motion for disclosure of supplemental discovery [DE 25] is **DENIED**; and

(2) Sanders **SHALL FILE** any defensive motions no later than **May 29, 2020**.

This 11th day of May, 2020.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge