UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 5:20-CR-09-JMH-MAS |
| v. | ) | |
| | ) | **MEMORANDUM** |
| ANTWONE SANDERS, | ) | **OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\*

This matter is before the Court on Defendant Antwone Sanders' motion to suppress evidence resulting from a search of Sanders' residence on April 25, 2019. [DE 32]. He also requests an evidentiary hearing to question one of the officers involved in the investigation leading up to the issuance of the warrant in an attempt to dispute probable cause. For the reasons stated below, this Court will deny Sanders' motion to suppress and his request for an evidentiary hearing.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Sanders was the subject of two controlled buys conducted by the Lexington Police Department. [DE 32 at 1-2]. According to the affidavit in support of the search warrant, Sanders allegedly met with a confidential informant two times to sell heroin/fentanyl— both occurring in Sanders' vehicle. [DE 32 at 2]. After the first

controlled buy, police followed Sanders to his home, but did not see him leave the vehicle to enter the residence. [DE 32 at 2]. Prior to the second controlled buy, Detective Todd Hart saw Sanders leave the residence and enter the vehicle. [DE 32 at 2]. He did not see Sanders carrying anything to his vehicle and did not observe drugs, drug paraphernalia, or any other indicia of trafficking at the residence. [DE 32 at 2]. Sanders was observed driving from the residence to the controlled buy without stopping and was observed driving back to the residence without stopping. [DE 32 at 2-3].

With that information, Officer Brandon Hazelwood with the Lexington Police Department requested a search warrant for Sanders' residence. [DE 32 at 1-3]. The search warrant was granted, and, upon executing the warrant, the police located quantities of heroin/fentanyl, synthetic marijuana, cocaine base, scales, firearms, and ammunition. [DE 32 at 3]. During the search, Sanders verbally admitted to possessing the contraband and trafficking in narcotics. [DE 32 at 3].

Sanders has filed this motion to suppress all evidence found during the search because, he alleges, the warrant itself was defective. [DE 32 at 1]. He claims the affidavit does not contain enough factual information to establish a nexus between the residence and the alleged drug trafficking. [DE 32 at 4]. Furthermore, Sanders requests a *Franks* hearing to determine the

2

veracity of Hart's observations. [DE 32 at 6]. To support his distrust of Hart, a recently discovered video from another matter indicates that several members of Hart's unit may seriously question his integrity. [DE 32 at 6]. As such, Sanders seeks to have Hart's statements stricken from the affidavit and have the affidavit deemed insufficient for the purpose of establishing probable cause, thus invoking the exclusionary rule.

## II. LEGAL STANDARD

The Fourth Amendment makes it clear that search warrants are invalid without probable cause. U.S. Const. amend. IV. To establish probable cause, a search warrant must be supported by an affidavit in which an affiant asserts a series of facts supporting the requested intrusion. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The inquiry into probable cause is limited to the four corners of the affidavit; no other information should be considered. *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009). Deference is generally given to searches conducted pursuant to a warrant. *Massachusetts v. Upton*, 466 U.S. 727 (1984); *United States v. Coffey,* 434 F.3d 887, 892 (6th Cir. 2006). Thus, an issuing magistrate's decision should be reversed only if it was arbitrarily exercised. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

But if a trial court concludes that probable cause did not exist at the time of the execution of the search warrant, the

3

warrant is considered invalid. *Sgro v. U.S.*, 187 U.S. 206, 210 (1932). When a warrant is invalidated on these grounds, the evidence resulting from the search is no longer admissible in court. *Davis v. United States,* 564 U.S. 229, 231-32 (2011). However, some exceptions deem such evidence admissible, despite a lack of probable cause. *See id.* at 238-39.

### III. DISCUSSION

**A. *Franks* Hearing**

Under *Franks v. Delaware*, a criminal defendant has the right to request a hearing in which he or she can question the veracity of statements in a search warrant in order to challenge the validity of the warrant itself. 438 U.S. 154 (1978). To demonstrate a need for a hearing, however, the defendant must (1) make a preliminary showing that the affiant knowingly, intentionally, or with "reckless disregard for the truth" included a false statement, and (b) prove that the false statement was necessary to the finding of probable cause. *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) (citing *Franks*, 438 U.S. at 171–72).

4

Speculation about the credibility of any party involved in an investigation does not entitle a defendant to a *Franks* hearing.[1] Instead, the defendant must show that the *affiant* to the search warrant affidavit included the false statements either intentionally, knowingly, or with reckless disregard for the truth. *Rose*, 714 F.3d at 370. The affiant here is Officer Hazelwood, whereas the police officer whose ethics have been called into question is Detective Hart. No evidence has been introduced to indicate that Hazelwood knowingly, intentionally, or recklessly included false statements by referencing the observations of Detective Hart.

Furthermore, to hold a *Franks* hearing, there must be evidence indicating that the statements at issue are factually untrue. *Rose*, 714 F.3d at 370. In *Rose*, the Sixth Circuit explained that a person cannot "include false statements with a reckless disregard for the truth" if there is no false statement. *Id*. While the defendant does not need to wholly prove that the statements are untrue at

---

[1] Sanders repeatedly seeks to remind the Court of its denial of Sanders' motion for additional discovery in this case, quoting language from the opinion saying the officers could be called to testify about the veracity of the affidavit's statements. [*See* DE 40 at 1-2; DE 31 at 7, n. 1]. But that statement by the Court was not an invitation to hold a *Franks* hearing; Sanders must still make the showing required by federal law. In fact, quoting that statement alone pulls the Court's discussion out of context—it explicitly noted that the legitimacy of the affidavit was not at issue.

5

this time, he or she must make a "substantial preliminary showing." *Id.* There has been no showing that Hart's alleged sighting of Sanders leaving his residence is factually untrue. Evidence has not been included or even alluded to indicating that Hart could not have seen him there. The introduction of unrelated conversations between officers about Hart's potentially unethical behavior is insufficient to prove that, with respect to this particular incident, he was lying.

Finally, even if Hart's statements were considered factually untrue and were included recklessly, Hart's observations were not necessary to finding probable cause. Hart's observation is just one of three sightings of Sanders' vehicle at the residence and one of two sightings observing him travel between the residence and the vehicle. [DE 32 at 2-3]. Hart's observation adds nothing unique to the affidavit, it is merely another instance of Sanders at his residence. If the other, non-Hart observations are not enough to establish probable cause, it is difficult to imagine how observing one more trip with no additional indicia of trafficking would push the fact pattern into that realm. Alternatively, if the affidavit as it stands is considered enough for probable cause, it is also hard to imagine how removing Hart's observation would weaken the affidavit enough for it to no longer convey probable cause. As such, the veracity of Hart's statements is immaterial to whether probable cause existed.

6

**B. Probable Cause**

In order to establish probable cause for a search warrant of a location, there must be a "nexus" between the location to be searched and the evidence sought. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (citing *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir.1998)). When officers are searching for illegal narcotics, a warrant affidavit must only demonstrate a "fair probability" that the drugs will be found at a particular place. *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016). The Sixth Circuit in *Sumlin* recently held that an affidavit containing claims that (1) a person is an active drug dealer, (2) the residence belongs to the drug dealer, and (3) drug dealers tend to store drugs in their home, is sufficient for the nexus requirement in a probable-cause determination. *United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020). The third prong of that test is a trivial bar to pass, since it was sufficient when the affiant merely asserted that "he knew from his personal experience and training that drug dealers like Sumlin routinely keep drug-related items (i.e. records of their drug transactions, equipment, supplies, and weapons) at their residences." *Id* at 887. Further, the Sixth Circuit has held that a sufficient nexus exists when a person is seen leaving a residence and returning before and after witnessed narcotics transactions. *United States v. Houser*, 752 F. App'x 223, 227 (6th Cir. 2018).

Using the four-corners test to evaluate the present affidavit, there is no explicit assertion that, based on the affiant's personal experience, drug dealers tend to keep drug-related items at their residences. The affidavit does state that "[b]ased on the information received and the surveillance that followed, it is believed that evidence of Heroin/Fentanyl trafficking will be located upon search of [Sanders's residence]." [DE 32 at 3]. While the affidavit fails to explicitly connect the dots as to *why* these materials will be located at the residence, the missing premise is easy to infer from the stated facts. *See Gates*, 462 U.S. 213, 238 (probable cause is to be determined by a "practical, common-sense decision").

Given that Sanders was observed traveling between the vehicle in which the drug transactions occurred and the residence, it is reasonable for the officers to have surmised that evidence of drug trafficking would be found in the residence. *Sumlin* and similar cases allow officers to "connect the dots" between a drug dealer and their residence, especially as in the present case where Sanders was actually observed walking to the residence. The affidavit establishes probable cause sufficient under the Fourth Amendment. *See* U.S. Const. amend. IV; *Sumlin*, 956 F.3d at 886.

Finally, the Court is unconvinced by Sanders' argument that the first transaction was "stale," and thus, cannot be referenced in order to establish probable cause. As the government pointed

8

out in its response, "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001).

## C. Good Faith Exception

Even if the affidavit lacked probable cause, the evidence in dispute would be admitted pursuant to the good faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 918-19 (1984). This exception allows evidence to be admitted that was obtained from a warrant lacking probable cause, but which was relied on in good faith by the officers. *Id*. This exception applies to a police officer acting pursuant to a search warrant which he or she reasonably believes, or constructively would reasonably believe, is a valid and legal warrant. *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir.2006) (quoting *Leon,* 468 U.S. at 922-23). This is an objective standard, based on what a reasonable officer would believe, rather than a subjective inquiry into the particular officer. *Leon*, 468 U.S. 897, 919-20. There is, however, a limit on the application of this exception–it is not applicable to the following four situations:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for

9

> determining the existence of probable cause, or where
> the affidavit was so lacking in indicia of probable cause
> as to render official belief in its existence entirely
> unreasonable; and (4) where the officer's reliance on
> the warrant was not in good faith or objectively
> reasonable, such as where the warrant is facially
> deficient.

*United States v. Rice*, 478 F.3d 704, 711–12 (6th Cir.2007). The first prong parallels the language regarding the granting of a *Franks* hearing as made earlier and the same analysis would apply: absent any showing that the statement was made with reckless disregard for the truth and was actually false, this prong is not satisfied. There is also no showing regarding the second prong, that the magistrate issuing the warrant acted as a "rubber stamp"– the motion to suppress made no assertions even addressing the magistrate.

The affidavit, even if it were to be found lacking in some respects, is not a "mere bare bones" document. There must exist a "minimally sufficient nexus" to meet this requirement. *United States v. Brown*. 828 F.3d 375, 385 (6th Cir. 2016) (citing *Carpenter*, 360 F.3d at 596). Even if the nexus requirement for probable cause was not met, there is almost certainly a *minimal* nexus between Sanders' status as a drug dealer and his residence. *See United States v. Higgins, 557 F.3d 381, 390 (6th Cir. 2009)* (insufficient nexus for probable cause was nonetheless a sufficient nexus for good faith exception).

Furthermore, the officers were reasonable in believing the warrant was valid because the law regarding search warrants for residences of known drug dealers is nuanced and often contradictory. *Compare Brown,* 828 F.3d at 384 (requiring some "facts showing that the residence had been used in drug trafficking"), *and Higgins*, 557 F.3d at 390 (requiring evidence of trafficking from the residence), *with United States v. Davidson,* 936 F.2d 856 (6th Cir. 1991) (holding that a pattern of behavior consistent with drug dealing was sufficient for probable cause), *and Beckam v. Commonwealth*, 284 S.W.3d 547 (Ky. App. 2009) (Kentucky case holding that trace amounts of cocaine in returned rental vehicles was sufficient for probable cause to search the residence). Given the complexity of this legal issue, it is reasonable for an officer acting in good faith to defer to a judge regarding the legal sufficiency of the warrant. *See Leon*, 468 U.S. at 921 ("[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient."). As the officers who executed the search warrant appear to have acted in reasonable, good faith reliance on the warrant, the exception would apply.

## IV. CONCLUSION

Accordingly, for the reasons stated herein and the Court being sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendant Antwone Sanders' motion to suppress evidence obtained subsequent to the execution of the search warrant on April 25, 2019 [DE 32] is **DENIED;**

(2) Defendant's request for an evidentiary hearing pursuant to *Franks v. Delaware* to question the veracity of Detective Todd Hart's observations included in the affidavit for the search warrant executed on April 25, 2019 is **DENIED;** and

(3) Trial is hereby **SCHEDULED** in this matter for **Wednesday, September 9, 2020 at 9 a.m. in Lexington, Kentucky.**

This the 21st day of July, 2020.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge